OPINION OF THE COURT
Eugene E. Peckham, J.
A hearing was held on August 14, 2009, upon a petition under article 81 of the Mental Hygiene Law for the appointment of a guardian for respondent John D. (hereafter, John). In a decision on the record, this court found that John is not presently incapacitated, but that a protective arrangement in the form of a monitor of his financial affairs should be appointed. This decision is issued to fully explain the reasons for said decision, which is one of first impression in New York.
John has retired from his position as senior vice-president of a large, publicly traded corporation. His assets are over $3,000,000.
The testimony established that respondent was hospitalized for severe depression. In December 2007 he received therapy in the form of 22 electroshock treatments. The electroshock treatments apparently resolved his depression, but resulted in a period of hypomania. During the period of hypomania, he engaged in excessive and irrational spending.
Among other items, he loaned $130,000 to a friend for his restaurant business. The restaurant has gone out of business. He also loaned $5,000 to $10,000 to three individuals he just met which has not been repaid. He also purchased motorcycles, farm equipment and many gifts and appliances. In total, he estimates spending about $500,000 since February 2008. This includes $120,000 for lakefront property and $70,000 for the Scott Hotel which needs extensive renovation. He testified he does not expect to make a profit from the Scott Hotel transaction, but rather to renovate it and then enter into a lease purchase with some other friends.
During his mental illness, his wife alleges he has threatened her and destroyed her art studio. As a result, she began a divorce action and obtained a protective order. John spent time in jail in *942 June 2008 for violation of the protective order and has pleaded guilty to two misdemeanors for violating the protective order. While in jail, he advanced bail money to two individuals he met in jail, some of which has been paid back.
Despite all this, John testified rationally and coherently about his mental illness and his reasons for these transactions. He also stated that since March 2009 he has felt good and has recovered from his depression and hypomania. He keeps his doctor’s appointments, but has been advised there is at least a 30% chance of a relapse. He makes his own investment decisions in consultation with a Merrill Lynch account executive. He is opposed to the appointment of a guardian because he claims it is not now necessary.
The court evaluator’s report recommends that there is no need for any long-term guardianship and “that the role of any guardian be limited to protecting a certain amount of the principal and that John D. continue to have the right to participate in making investment decisions.”
Article 81 of the Mental Hygiene Law represents a major change in the law of surrogate decision making in New York. The guiding principle is the “least restrictive” form of intervention.
“The legislature finds that it is desirable for and beneficial to persons with incapacities to make available to them the least restrictive form of intervention which assists them in meeting their needs but, at the same time, permits them to exercise the independence and self-determination of which they are capable” (Mental Hygiene Law § 81.01).
Further, the system is to be “tailored to the individual needs of that person . . . which affords the person the greatest amount of independence and self-determination and participation in all the decisions affecting such person’s life” (Mental Hygiene Law § 81.01).
In furtherance of this purpose, Mental Hygiene Law § 81.16 (b) provides for protective arrangements. The section provides the court may “ratify any transaction or series of transactions necessary to achieve any security, service, or care arrangement meeting the foreseeable needs of the incapacitated person.” (Id.) Also that “[bjefore approving a protective arrangement . . . the court shall consider the interests of dependents and creditors of the incapacitated person.” (Id.)
The leading treatise on guardianship in New York states in regard to this provision: “The court has a very broad selection
*943 of alternatives in addressing the case before it. It may ...(b) fashion a protective arrangement without appointing a guardian.” (Abrams, Guardianship Practice in New York State, ch 1, § III [E] [3], at 24 [1997].)
The only similar case in New York is Matter of Lambrigger (NYLJ, May 31, 1994, at 37, col 1). In that case, the respondent suffered a stroke, was confined to a nursing home and was “unable to move about or communicate verbally.” (Id.) Nevertheless, the court found she was not incapacitated. The court then appointed a special guardian to assist her “in the preparation ... of any forms, documents or other papers necessary for her to implement any property management decisions she may make.” (Id.)
In the present case, the court finds that John is not now incapacitated. Nevertheless, he has suffered from depression and hypomania in the recent past and he himself testified there is a significant chance of relapse. A relapse could result in a return to irrational expenditures which would be detrimental to his wife’s claim for equitable distribution in the divorce action. Mental Hygiene Law § 81.16 (b) enjoins the court to consider in any protective arrangement the rights of creditors and dependents.
Accordingly, the court finds that a protective arrangement is necessary to monitor and oversee John’s financial activities and medical needs and appointments in light of the possibility of relapse.
Mary Leonard, attorney-at-law, is appointed as monitor to perform such duties with compensation at her regular hourly rates. This arrangement constitutes the least restrictive form of intervention for John’s situation.
The powers and duties granted to Ms. Leonard are:
1. To receive and review copies of all John’s bank, brokerage and other financial records and to speak to and confer with employees of any institution holding his assets or accounts.
2. To receive and review all of John’s physician, hospital and other medical records and to speak to and confer with his physicians, psychologists and other medical providers.
3. To review and approve or disapprove any financial transaction in excess of $50,000.
Such appointment shall be for a period of one year with Ms. Leonard authorized to apply to the court for an extension of her appointment on notice to John. In furtherance of such order, *944 both John and any financial institution holding any assets or accounts of John’s are hereby restrained from transferring, releasing or paying to John or any other person or entity any amount of $50,000 or more without the written approval of Ms. Leonard.
There is also an existing order issued by Honorable Philip Rumsey in the matrimonial action between John and his wife restraining his Merrill Lynch account. Mental Hygiene Law § 81.16 (b) mandates consideration of the rights of dependents and creditors, therefore, such restraining order is continued to protect John’s wife.
Rules of the Chief Judge (22 NYCRR) part 36 provides that a court evaluator shall not be appointed as guardian except under extenuating circumstances that are set forth in writing by the court. Mary Leonard, Esq. is the court evaluator, but the court finds such extenuating circumstances exist for several reasons: (1) she is an attorney-at-law and officer of the court; (2) she is appointed to monitor John’s activities, not act as guardian; (3) both petitioners and respondent have agreed to her appointment; (4) she is on the part 36 list of guardians for Cortland County; (5) she is familiar with the unique circumstances of this case, the parties involved, and has already reviewed his financial situation and also received authorization from this court to consult John’s physicians and review his medical records.